No. 91-234

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

TOM HYDE and CAROL HYDE,

      Plaintiffs and Appellants,

  -vs-

EVERGREEN VOLUNTEER RURAL FIRE DEPARTMENT,

      Defendant and Respondent.

FILED

MAR 3 1 1992

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
             In and for the County of Flathead,
             The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Thomas E. Boland argued; Regnier, Lewis & Boland,
           Great Falls, Montana

      For Respondent:

           L. D. Nybo; Allen P. Lanning argued; Conklin,
           Nybo, LeVeque & Murphy, Great Falls, Montana

Submitted: December 4, 1991

Decided: March 31, 1992

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs Tom and Carol Hyde brought this action to recover damages incurred in a fire at their home. The District Court for the Eleventh Judicial District, Flathead County, granted summary judgment to defendant Evergreen Volunteer Rural Fire Department (Evergreen). The court ruled that Evergreen is immune from suit under § 7-33-2208, MCA (1985). The Hydes appeal. We affirm.

The issues are:

1. Did the District Court err in determining that Evergreen is immune from suit under § 7-33-2208, MCA (1985)?

2. Did Evergreen's purchase of liability insurance constitute a waiver of its immunity from suit to the extent of the insurance coverage?

3. Is there a genuine issue of material fact precluding summary judgment?

On January 26, 1987, Evergreen was called to a fire at the Hyde residence. The volunteer firefighters made several attempts to suppress the fire on that day and in the early morning of January 27, 1987, but their efforts proved unsuccessful. The Hydes' residence and personal belongings valued at over $247,000 were destroyed in the fire.

The Hydes filed suit against Evergreen, Flathead County, and Does A through Z, seeking damages on a theory of negligence in fighting the fire. The court granted Flathead County summary

judgment for failure to state a claim against it. Evergreen then filed its motion for summary judgment, which was granted in March 1991.

## I

Did the District Court err in determining that Evergreen is immune from suit under § **7-33-2208,** MCA **(1985)?**

Section **7-33-2208,** MCA (1985), provided:

> **Fire control powers ‟ liability. (1)** Any county rural fire chief or district rural fire chief or his deputy may enter private property or direct the entry of fire control crews for the purpose of suppressing fires.
>
> (2) <u>A chief or deputy and the county or rural district are immune from suit for injury to persons or property resulting from actions taken to suppress fires under this section</u>. [Emphasis added.]

The Hydes argue that this statute only applied to rural fire districts organized under Title 7, Chapter **33,** Part 22, MCA. They assert that it did not provide immunity for Evergreen because Evergreen was organized under Title 7, Chapter *33*, Part 21, MCA.

Title 7, Chapter **33,** Part 21, MCA, is entitled "Rural Fire Districts." It provides for the establishment by county commissioners of fire districts in unincorporated territories or towns after petition by the owners of fifty percent of the privately owned lands in the area. Title 7, Chapter **33,** Part **22,** MCA, is entitled "Rural Fire Protection." It grants county governing bodies the authority to provide for the organization of volunteer rural fire control crews and to provide for the formation of county

volunteer fire companies.  There are differences in the organizational structures and financing of firefighting units established under the two parts.

Section **7-33-2208,** MCA **(1985),** did not provide immunity for actions taken to suppress fires "under this <u>part</u>."  That would be the appropriate language if immunity were to apply only to Part **22.** The statute provided that immunity applied to actions taken to suppress fires "under this <u>section</u>."  Nevertheless, we will examine the legislative history of § **7-33-2208,** MCA **(1985),** to determine whether it supports the Hydes' position.

Section **7-33-2208,** MCA **(1985),** was originally enacted as Ch. **173,** Sec. **3(4), L. 1945:**

> **(4)** Any county rural fire chief and/or district rural fire chief may enter private property either with or without fire control crews for the purpose of suppressing fires, and are exempt from any damage resulting from such activity[.]

This statute was originally codified at R.C.M. § 28-603(4).

Another part of the same legislation, Section **4** of Ch. **173,** L. **1945,** provided:

> **Lands** to Which Applicable. The provisions of this act are not applicable to any organized forest protection district or fire district defined in Chapter **128,** Laws of **1939,** as amended by Chapter **141,** Laws of **1941** or any organized fire protection district organized and operating under other legal authority.  This act shall apply to all lands not protected by federal, state, municipal or private protective agencies organized under the laws of the State of Montana.

The statutes relating to "organized forest protection district or fire district defined in Chapter 128, Laws of 1939, as amended by Chapter 141, Laws of 1941" provide for protection of timber resources and are now codified at Title 76, Chapter 13, Part 1, MCA. It is not clear whether fire districts such as Evergreen were excluded from immunity under the language "any organized fire protection district organized and operating under other legal authority" or were given immunity under the language "[t]his act shall apply to all lands not protected by federal, state, municipal or private protective agencies organized under the laws of the State of Montana." In any event, Section 4 of Chapter 173, L. 1945, was codified at R.C.M. § 28-604 and was repealed in 1977. Ch. 397, L. 1977.

Also in 1977, the Montana Legislature amended the statute which became § 7-33-2208, MCA (1985), as follows:

> Any county rural fire chief or district rural fire chief or his deputy may enter private property or direct the entry of fire control crews for the purpose of suppressing fires. A chief or deputy and the county or rural district are immune from suit for injury to persons or property resulting from actions taken to suppress fires under this subsection.

Chapter 73, Sec. 1, L. 1977. The amendment was approved by a two-thirds majority of the Legislature as is required for laws which provide governmental immunity. Mont. Const. Art. II, Sec. 18.

This code section was not amended by the Legislature between 1977 and 1989. During recodification from the Revised Codes of

5

Montana into the Montana Code Annotated, the Montana Code Commissioner redesignated it as a code section in itself, instead of subsection (4) of a larger statute, and changed the word "subsection" in the statute to "section."

We conclude that the use of the word "section" in § 7-33-2208, MCA (1985), does not resolve the question of whether the immunity provided under the statute applies to fire districts established under Title 7, Chapter 33, Part 21, MCA. Therefore we will examine other language used in § 7-33-2208, MCA (1985).

The terms "county rural fire chief" and "district rural fire chief" in § 7-33-2208, MCA (1985), reflected terms used in Title 7, Chapter 33, Part 22, MCA. See §§ 7-33-2202 through -2204, MCA. The term "rural district" as found in § 7-33-2208, MCA (1985), is not otherwise used in Part 22. Part 22 addresses "rural fire control crews" and "county volunteer fire companies," not "county or rural districts." The term "rural district" is, however, used in Part 21. See, e.g., § 7-33-2101, MCA.

We conclude that under the plain language of § 7-33-2208, MCA (1985), immunity extended to Evergreen and other rural fire districts established pursuant to Title 7, Chapter 33, Part 21, MCA. This interpretation promotes the important function of fire districts in protecting public and private rural property from fire in Montana. Under the interpretation urged by the Hydes, immunity for rural firefighters and their chief would depend on how that

firefighting unit originated.  If a county government established a rural fire control crew or fire company on its own initiative, then that entity would be immune, but if the county commissioners established a rural fire district in response to a petition by landowners who wished to protect their property, then that district and its fire chief would not be immune.  There is no logic or reason for granting or withholding immunity to a rural firefighting unit based upon the method of its formation.

We note that § 7-33-2208, MCA, was amended in 1989 and now applies to "[a] chief or deputy and the county, rural district, fire company, or fire service area."  This amendment passed by a two-thirds majority of the Legislature.  The terms added in the 1989 amendment appear in Title 7, Chapter 33, Part 23, MCA ("fire companies"), and Title 7, Chapter 33, Part 24, MCA ("fire service areas").

## II

Did Evergreen's purchase of liability insurance constitute a waiver of its immunity from suit to the extent of the insurance coverage?

The Hydes' argument under this issue is based on this Court's opinion in Crowell v. School Dist. No. 7 (1991), 247 Mont. 38, 805 P.2d 522.  In that opinion, this Court held that the immunity provided to school districts under § 2-9-111, MCA (1989), was waived to the extent of coverage of any liability insurance

7

purchased by the school district.  Crowell, 805 P.2d at 534.  The Montana Legislature promptly acted to negate the effect of Crowell by enacting Chapter 821, L. 1991.  That act amended § 2-9-111, MCA, to specifically provide that the acquisition of insurance does not operate as a waiver of the immunity provided by the statute. Section 2-9-111(c)(4), MCA.

The reasoning in Crowell involved an established legislative pattern of joint consideration of insurance and governmental immunity in relation to § 2-9-111, MCA.  Crowell, 805 P.2d at 528-33.  No pattern of joint legislative consideration of insurance and immunity is present in the legislative history of § 7-33-2208, MCA (1985).  In fact, no joint consideration of these issues appears in the legislative history at all.  We therefore hold that Crowell has no application to this case and that Evergreen did not waive its immunity from suit by purchasing liability insurance.

### III

Is there a genuine issue of material fact precluding summary judgment?

The Hydes assert that their complaint contains allegations which are outside the bounds of the immunity provided under § 7-33-2208, MCA (1985).  Specifically, they cite the claim in Paragraph XI of their complaint that Evergreen was negligent in failing or refusing to have a properly equipped fire truck and a properly trained fire crew.  The Hydes argue that these acts and omissions

of Evergreen were not protected under the immunity statute because they took place before fire suppression activity commenced.

But even when viewed in the light most favorable to them, the Hydes' claim is based upon Evergxeen's alleged failure to have a properly equipped fire truck and a properly trained fire crew <u>at the fire at their home</u>.  Any damages suffered by the Hydes and caused by Evergreen were a result of the fire suppression activity by Evergreen at the fire at the Hydes' home.  Under § *7-33-2208*, MCA (1985), Evergreen is exempt from any damage resulting from its fire suppression activity.  We therefore hold no genuine issue of material fact precludes summary judgment.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

9

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the opinion of the majority as to issues 1 and 2. I must respectfully dissent from that opinion on issue *3*, relating to whether there is a genuine issue of material fact. I do so because the result of that holding is to broaden the applicability of the immunity I agree is extended to Evergreen under § 7-33-2208, MCA, past the point included within that statute.

Furthermore, in order to reach its conclusion, the majority has reached beyond the District Court's order granting summary judgment. That order, while couched in part in summary judgment terms, was in effect an order granting a motion to dismiss for failure to state a claim premised entirely on the availability of the statutory immunity, rather than an order determining that no genuine issues of material fact existed. To that extent, this Court has engaged in unstated fact-finding of its own that the damages suffered by the Hydes were <u>caused</u> by Evergreen's activities at the Hydes' residence during the fire, as opposed to being caused by negligent acts or omissions by Evergreen in advance of that fire.

I would remand for such further motions or proceedings as may be appropriate.

_____
Justice

10

Justice Terry N. Trieweiler dissenting.

I dissent from every part of the majority opinion.

If the plaintiffs' allegations are true, and for purposes of reviewing the District Court's order dismissing their claim by summary judgment, we must presume they are, then their home and the property that it contained were totally destroyed due to repeated acts of negligence on the part of the Evergreen Volunteer Rural Fire Department.

Plaintiffs allege that at 2 p.m. on January 26, 1987, the defendant fire department was called to suppress a fire at their home. It arrived and attempted to do so until about 4 p.m., when it left the premises over the plaintiffs' protestations while fire and smoke were still present at the residence.

At 6:16 p.m. the same day, defendant was called back to the residence to again suppress the fire. It attempted to do so until 11:15 p.m., at which time it once again left the premises, in spite of the fact that fire and smoke were still present.

At 12:15 a.m., the defendant was called back to the plaintiffs' residence for a third time and remained until 2 a.m. on January 27, at which time they again left the scene. Plaintiffs allege that fire and smoke were still present when defendant left this third time.

Finally, at 6:45 a.m., the defendant was called back to the plaintiffs' residence for a fourth time and remained at the

residence until 9 a.m., by which time plaintiffs' entire residence and all of its contents and furnishings were destroyed.

Plaintiffs allege damage to their property in the amount of $247,000. At the time of the fire, the defendant had in effect fire liability insurance coverage in the amount of $1 million.

Immunity protects someone who has committed a wrongful or illegal act at the expense of the victim of that wrongful act. Immunity should never be found unless established in a constitutional manner and made perfectly clear. Why any court would want to strain as hard as this Court has to find immunity where it has not been clearly provided is beyond my comprehension.

The majority opinion violates all rules of statutory construction and common sense.

In his concurring opinion in *Crowell* v. *School District No. 7 of Gallatin County* (1991), 247 Mont. 38, 805 P.2d 522, Chief Justice J. A. Turnage correctly points out that:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. This is the rule of law governing statutory construction, and it is an appropriate and proper rule. There is no place for individual preference or desire to become the rule of law when the Court interprets statutory language.

*Crowell,* 805 P.2d at 535.

This prior observation by the author of the majority opinion sets forth the proper role of this Court. However, the majority's

12

strained interpretation of § 7-33-2208, MCA (1987), in this case is the antithesis of Chief Justice Turnage's prior admonition.

Title 7, Chapter 33, Part 21 authorizes the board of county commissioners to establish rural fire districts pursuant to a petition of property owners within the district. There is no purpose ascribed to Part 21 other than to allow rural residents to join together to protect themselves against fire. There is no immunity provided in Part 21 for the fire districts that are formed.

Title 7, Chapter 33, Part 22 has a different purpose. It allows county commissioners to, on their own initiative, organize a volunteer rural fire control crew or county volunteer fire companies for the specified purpose of protecting undeveloped areas, such as range land, farm land, and forest resources which might not normally be included in rural fire districts.

Section 7-33-2208, MCA, allows the various fire departments and their heads to enter private property for the purpose of suppressing fires. Since that section is found in Part 22 and makes no reference to Part 21, the power authorized is presumably for the purpose of fighting fires in those areas that Part 22 was established to protect. Those would be range fires, farm fires, and fires involving forest resources where entry on private land might be necessary to protect other land.

Section 7-22-2208(2), MCA (1987), is very specific. It provides for immunity only for actions taken under that section.

13

That section is found only in Part 22 and presumably pertains only to the fire fighting activities for which Part 22 was enacted. In order to expand § 7-22-2208(2), MCA (1987), to apply to rural fire districts which are established under Part 21, the majority had to apply imaginative, convoluted reasoning and insert into § 7-22-2208(2), MCA (1987), that which had not been inserted by the legislature.

The majority's strained interpretation of § 7-22-2208(2), MCA (1987), violates even more fundamental rules of construction. Article II, Section 18, of the 1972 Montana Constitution, provides:

> The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

People in Montana who have been injured by the wrongful acts of their government or the agencies that it forms have a constitutional right to seek compensation. Any statute in derogation of a constitutional right should be strictly construed. 73 **Am.** Jur. 2d *Statutes* § 283 (19__). If the legislature has not clearly provided for immunity, this Court has no business creating immunity. *B.M. v. State* (1982), 200 Mont. 58, 649 P.2d 425.

If anything can possibly be clear from the line of reasoning pursued by the majority in their opinion, it is that the legislature has not "clearly provided for immunity" for the Evergreen Volunteer Rural Fire Department. Instead, this Court has

14

once again shown its preference for protecting the interests of government, rather than people, by creating that immunity.

Nor do I understand the majority's attempt to distinguish the waiver of immunity that they found existed in *Crowell* from the situation in this case. If immunity exists, the rationale for finding a waiver of immunity by purchase of liability insurance is exactly the same. In arriving at its decision in *Crowell,* this Court quoted with approval from the following language of the Arizona Supreme Court in *Smith Plumbing Company v. Aetna Casualty and Surety Company* (1986), 149 Ariz. 524, 720 P.2d 499, 502:

> The sovereign immunity doctrine originates in social policy designed to protect the State "from burdensome interference with the performance of its governmental functions. . . ." [Citation omitted.] The compensated surety of a sovereign does not perform the governmental functions that **require** protection; therefore, the protections a government needs to conduct its functions do not extend to the surety. Furthermore, to allow a compensated surety such as Aetna to assert its principal's sovereign immunity and so avoid payment on a bond would be to provide a windfall to the surety. [Citations omitted.] If Aetna were allowed this defense, it would receive valuable consideration in the form of compensation . . . without assuming the risk of payment . . . .

*Crowell,* 805 P.2d at 527.

After reviewing the statutes authorizing the purchase of insurance by governmental entities, this Court did not find any

15

express waiver of immunity. On the contrary, it found a waiver on reasoning similar to that of the Arizona Supreme Court.

> We come now to a critical part of the analysis. Is it improper to refuse to pay insurance proceeds to a party injured by the negligence of the school district, where insurance proceeds are available under a previously purchased insurance policy? If such a denial is made, then the party injured by the negligence of the school district has been denied compensation for injury and has been required to absorb all of the costs of such injury. If the school district is able to deny payment, then it has abdicated any responsibility for its own negligence. In addition, such a refusal to use insurance proceeds allows an insurance carrier to refuse to pay insurance benefits for which it has already received premium payment.
>
> As we carefully weigh the various factors, we conclude that the purchase of liability insurance by the School District in the present case should waive its immunity to the extent of the insurance coverage.

*Crowell*, 805 P.2d at 533.

The exact same circumstances this Court relied on in arriving at its decision in **Crowell** exist in this case. The exact same rationale should, therefore, also be applied. The defendant in this case purchased liability insurance and paid premiums for coverage. To deny a claim by the plaintiffs based upon the fire district's immunity allows the insurance carrier to refuse to pay insurance benefits for which it has already received premium payment. Therefore, purchase of the insurance coverage by the fire district should imply the same intention to waive immunity that was attributed to the school district in *Crowell*. There is no rational basis for distinguishing between the two entities.

16

The majority notes that the Montana Legislature negated the effect of *Crowell* when it amended § **2-9-111,** MCA, in **1991.** However, the only effect of that amendment is to provide that purchase *of* liability insurance does not waive the immunity provided for by that statute. That amendment had no effect on waiver of the immunity provided for in any other statute. Therefore, the amendment does not preclude the application of the *Crowell* rationale in this case.

Finally, I concur with Justice Gray's dissent to the majority's conclusion on Issue **3.** The plaintiffs' complaint that the defendant failed to properly equip its trucks and maintain its equipment, and failed to properly train its crew, alleged separate acts of negligence which occurred long before the fire on plaintiffs' property and had nothing to do with the negligent manner in which the defendant failed to suppress that fire.

This case is another example of this Court's propensity to defer to the interests of government when it comes into conflict with the interests of private citizens.

Our responsibility is not to protect the government or its agencies from its citizens. It is to protect private citizens from their government.

For these reasons, I dissent from the opinion of the majority.

_____
Justice

17

Justice William E. Hunt, Sr., dissenting.

I concur in the dissent of Justice Trieweiler, and in Justice Gray's dissent to the majority's conclusion on Issue 3.

_William E Hunt Sr_
Justice

March 31, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Thomas E. Boland
Regnier, Lewis & Boland
P.O. Box 2325
Great Falls, MT  59403

L. D. Nybo and Allen P. Lanning
Conklin, Nybo, LeVeque & Murphy
P.O. Box 2049
Great Falls, MT  59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy